2020 IL App (1st) 191578-U

FIRST DIVISION
August 3, 2020

No. 1-19-1578

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | |
|---|---|
| ANN DUGGAN, as attorney-in-fact for Stephen Duggan, | ) Appeal from the Circuit Court of <br> ) Cook County <br> ) |
| Plaintiff-Appellee, | ) <br> ) |
| v. | ) No. 17 L 7976 <br> ) |
| SYMPHONY CRESTWOOD, LLC, | ) <br> ) Honorable James P. Flannery |
| Defendant-Appellant. | ) Judge Presiding |

PRESIDING JUSTICE GRIFFIN delivered the judgment of the court.
Justices Hyman and Pierce concurred in the judgment.

**ORDER**

¶ 1     *Held*: The trial court did not err when it enforced the parties' settlement agreement.[1]

¶ 2     This appeal stems from a case that began as a negligence case against a senior care

facility. The parties reached a settlement agreement and dismissed the case pursuant to that

_____

[1] On July 15, 2020, we entered an order affirming the judgment of the circuit court. In that order, we indicated that a separate order explaining the basis for our judgment was forthcoming. For purposes of clarity in the appellate record, that July 15, 2020 order is hereby withdrawn, and this order shall stand as the judgment of the court.

settlement. When the defendant refused to pay the plaintiff the monetary settlement, the plaintiff brought a motion to enforce the settlement agreement.

¶ 3    The parties disagree about whether payment of the settlement was conditioned upon the resident at issue moving out of the senior care facility. Plaintiff argues that the settlement agreement contained no such contingency; while the senior care facility argues that its payment of the settlement money was conditioned on the resident finding an alternative residence. The trial court found for the plaintiff and ordered that the settlement agreement be enforced without the imposition of any requirement that the resident move out of the senior care facility. We conclude that the trial court did not err when it enforced the settlement and, accordingly, we affirm.

¶ 4                                   I. BACKGROUND

¶ 5    Plaintiff Ann Duggan ("plaintiff") is the sister of and attorney-in-fact for Stephen Duggan ("Duggan"). Defendant Symphony Crestwood is a senior care facility at which Duggan is a resident. Plaintiff filed this case alleging that Symphony Crestwood was negligent for, among other things, failing to properly administer a prescribed anti-seizure medication to Duggan that resulted in an injury.

¶ 6    During the course of the case, the parties began discussing a settlement. The parties settled the case on August 1, 2018. The trial court dismissed the case pursuant to the parties' settlement on March 8, 2019. The parties never reduced their agreement to writing.

¶ 7    The dispute that became the impetus for this appeal became apparent at least as early as September 24, 2018. In an email, Symphony Crestwood's counsel advised plaintiff's counsel that, "if we are going to be able to settle," Duggan would need to transfer to a different facility. Plaintiff's counsel responded in an email stating, "[t]hat wasn't our deal. We said we would be

reasonable" in finding a different facility for Duggan. The parties attempted to find another facility for Duggan, but they ultimately could not find another facility suitable to plaintiff's interests that would accept Duggan as a resident immediately.

¶ 8    The parties exchanged several more emails about the status of the settlement during the ensuing months. Counsel for the parties each continued to assert a different version of the terms they had agreed upon when they settled the case: Symphony Crestwood claiming that the settlement was contingent on Duggan moving out of the facility; and plaintiff claiming that she only agreed to be reasonable in finding different placement for Duggan. During the same timeframe that the parties were exchanging the emails, they appeared in court multiple times and indicated to the court that the case was settled, but they requested continuances only for the purpose of completing the settlement petition. Neither party ever raised any concern to the court about the disputed terms of the settlement, instead continually reporting that the case was settled.

¶ 9    On March 8, 2019, the scheduled date for trial, the court entered an order dismissing the case with prejudice upon the parties' representation that the case was settled. The parties *still* did not disclose to the court that there was any issue regarding the terms of the agreement, despite their contemporaneous communications indicating their awareness of the disputed terms. Only after the case was dismissed did the parties actually attempt to reduce their agreement to writing.

¶ 10    After the case was dismissed, Symphony Crestwood's counsel sent an email to plaintiff's counsel with the "agreed" terms for the settlement. Symphony Crestwood's version of the terms that it sent for a written agreement included a clause indicating that "no settlement funds will be tendered to [plaintiff] until Stephen Duggan voluntary (sic) transfers from Defendant's facility to another nursing home or suitable location." Plaintiff objected to the inclusion of that clause.

Seeing that the parties were at a dead end, plaintiff filed a motion in the circuit court to enforce the settlement agreement.

¶ 11    In her motion to enforce the settlement agreement, plaintiff relayed to the court that the parties settled the case for $250,000. Plaintiff, however, advised the court that the parties were at odds as to whether the agreement required Duggan to transfer out of Symphony Crestwood and to another facility in order for the settlement funds to be disbursed. Plaintiff moved the court to enforce the settlement agreement without requiring Duggan to transfer from the Symphony Crestwood facility.

¶ 12    The trial court heard arguments on the motion and granted plaintiff's motion to enforce the agreement—without any obligation that Duggan be moved to a different facility in order to be entitled to payment. Symphony Crestwood filed a motion to reconsider which the trial court denied. Symphony Crestwood now appeals the trial court's order enforcing the settlement agreement without the condition that Duggan be moved to another facility.

¶ 13                                    II. ANALYSIS

¶ 14    The parties disagree about the applicable standard of review. Symphony Crestwood argues that our review should be *de novo* (citing *County Line Nurseries & Landscaping, Inc., ex rel. Bankruptcy Trustee v. Glencoe Park District*, 2015 IL App (1st) 143776, ¶ 32). Plaintiff argues that we should review the trial court's order under the manifest weight of the evidence standard (citing, among other cases, *Webster v. Hartman*, 309 Ill. App. 3d 459, 460 (1999)). Under either standard of review, our judgment that the trial court did not err in enforcing the settlement agreement would be the same.

¶ 15    There is no dispute in this case that the parties settled. Both parties acknowledge that the case was resolved, through negotiation, on August 1, 2018. Symphony Crestwood's argument is

that "the circuit court erred in granting the plaintiff's motion to enforce a settlement against Symphony despite the plaintiff's failure to actually transfer Mr. Duggan out of the defendant's facility[.]" Symphony Crestwood contends that the record demonstrates that it demanded that Duggan transfer out of the facility as "a condition of settlement." The record does not bear out Symphony Crestwood's contention.

¶ 16    There is no documentary evidence of the parties' settlement negotiations. There is similarly no documentary evidence of the terms of the settlement that was produced at the time the settlement was made. So Symphony Crestwood has us review the parties' post-settlement email conversations with an aim of persuading us that the agreement was contingent upon Duggan's transfer from its facility. The post-settlement email conversations do not prove the terms of the parties' agreement.

¶ 17    The record demonstrates that Symphony Crestwood urged plaintiff to agree to a voluntary transfer of Duggan to a different facility, but there is no evidence that plaintiff ever agreed to such a condition. Symphony Crestwood asked if plaintiff would be agreeable to a voluntary transfer from its facility, but plaintiff never indicated its assent to that request. Plaintiff points out that it would never have agreed to such a condition because, as the record demonstrates, plaintiff had no ability to control whether another facility would accept Duggan. Duggan has been on a waiting list for a facility that plaintiff finds acceptable for a number of months now. The record speaks to the parties' efforts to find an alternative residence for Duggan, and it demonstrates the difficulty in expediently finding a senior care facility that would accept him that also suits Duggan's interests. Symphony Crestwood has not been able to produce a shred of evidence that plaintiff ever agreed to such a contingency and cannot even point to a tacit acknowledgement of such an agreement in the parties' correspondence. Symphony Crestwood

never put a triable question of fact at issue through the production of any sort of evidence of a contingency and cannot point to any even on appeal.

¶ 18      More important than the content of the parties' emails was Symphony Crestwood's actions after the case was admittedly settled. Symphony Crestwood repeatedly acted in a manner that is inconsistent with the position in which it now seeks to be placed by the court, such that it would be inequitable to enforce its proffered interpretation of the agreement or otherwise grant it the relief it seeks. The parties appeared in court on at least *seven* occasions over an eight-month period and represented to the court that the case was settled. Symphony Crestwood never objected. Symphony Crestwood had actual knowledge of the parties' divergent understandings of the agreement during that entire period, but it chose to steadfastly forge ahead under the pretense that the case was settled, without any mention of a contingency. Symphony Crestwood participated in representing to the court that the case was settled and it never objected in any way to the idea that the case was settled or that there was an issue regarding payment being contingent on relocating until after the case was dismissed.

¶ 19      Symphony Crestwood had a full and fair opportunity to raise any issue about the terms of the settlement agreement, including the position it now takes, prior to it participating in inducing the court to dismiss the case. With its representations and by its conduct, Symphony Crestwood cannot demand enforcement of the alleged condition of settlement. See *City of Chicago v. Michigan Beach Housing Co-op.*, 242 Ill. App. 3d 636, 649 (1993) (waiver may be implied from conduct inconsistent with an intent to enforce a right); see also *Wells v. Minor*, 219 Ill. App. 3d 32, 45 (1991). Exhibiting conduct inconsistent with known rights or conduct that indicates that a party does not intend to avail himself of a particular right constitutes a waiver of that condition. *Pierce v. MacNeal Memorial Hosp. Ass'n,* 46 Ill. App. 3d 42, 53 (1977). Symphony Crestwood

consciously disregarded any problem with the settlement when it repeatedly moved the court to dismiss the case without ever raising the issue that its payment was contingent on Duggan relocating.

¶ 20     Now, on appeal, Symphony Crestwood suggests that perhaps there was no meeting of the minds after all and, therefore, there was never an enforceable agreement to settle. That position is inconsistent with its several undisputed representations to the trial court that the case was settled without any mention of the disputed contingency and even the frequent acknowledgements in its brief and throughout the record on appeal. See, *e.g.*, Def. Br. p. 3 ("The parties arrived at an agreement to settle the plaintiff's case on August 1, 2018"). Symphony Crestwood cannot now claim that no settlement ever existed. While the case was pending, Symphony Crestwood outwardly acted as if the settlement was full speed ahead, up to and through the point of the case being dismissed. We cannot enforce a supposed contingency that Symphony Crestwood now claims is so vital, when it did nothing to assert or protect the viability of that supposed contingency during the pendency of the case. Despite knowledge of a dispute over the settlement terms, Symphony Crestwood turned a blind eye to the supposed contingency until after the case was adjudicated. Symphony Crestwood continually represented that there was a settlement without ever asserting that the payment was contingent on relocation and it is in no position to repudiate those representations at this point in the case. Symphony Crestwood failed to take reasonable steps to protect itself in the circuit court so as to entitle it to any relief on appeal.

¶ 21     Courts are encouraged to enforce parties' settlement agreements whenever it is reasonably possible to do so. *Opper v. Brotz*, 277 Ill. App. 3d 1024, 1029 (1996). At issue here is only the timing of the payment. Symphony Crestwood acknowledges that it has an obligation to pay Duggan for his injury, but it contends that he is not entitled to the settlement funds until he

transfers out of its facility. Plaintiff argues that Duggan is entitled to payment immediately and that she will work to facilitate Mr. Duggan's transfer to another facility whenever a reasonably sufficient placement becomes available for his transfer. The trial court found that there was no agreement that payment was contingent on Duggan moving and, thus, that plaintiff is entitled to the settlement funds now. We cannot say that the trial court erred in coming to that conclusion.

¶ 22                                III. CONCLUSION

¶ 23     Accordingly, we affirm.

¶ 24     Affirmed.